UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-61094-BLOOM/Valle

NATHALIE JIMENEZ,

    Plaintiff,
v.

ACCOUNT SERVICES,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Account Services' ("Defendant") Motion to Dismiss, ECF No. [35] (the "Motion"), Plaintiff Nathalie Jimenez's ("Plaintiff") Second Amended Complaint, ECF No. [27]. Plaintiff timely filed a Response, ECF No. [36], and Defendant timely filed a reply, ECF No. [37]. For the reasons set forth below, Defendant's Motion is granted in part and denied in part.

### I. BACKGROUND

The Court set forth the facts of this case in its prior Order, ECF No. [26], granting in part and denying in part Defendant's first Motion to Dismiss, ECF No. [12]. Given their pertinence to the Court's instant analysis, those facts bear repeating.

Like Plaintiff's First Amended Complaint, ECF No. [23], Plaintiff's Second Amended Complaint alleges that Plaintiff ordered credit reports from three Credit Reporting Agencies ("CRAs") on or about January 14, 2016, and that each credit report revealed that Defendant, with whom Plaintiff had no prior relationship, had reported negative information against her – namely, a debt in the amount of $123.45. ECF No. [27] at ¶ 10. On January 19, 2016, Plaintiff sent a "debt validation letter" to the entity to which the debt was purportedly owed – Texas

MedClinic – and "dispute letters" to each of the CRAs from which she had received a credit report.[1]  *Id.* at ¶¶ 11-12 (citing ECF No. [10] at Exhs. A-B).[2]  Plaintiff sent dispute letters to each of the CRAs a second time on April 5, 2016.  *Id.* at ¶ 13 (citing ECF No. [10] at Exh. C).

On April 12, 2016, Plaintiff sent a second debt validation letter to Texas MedClinic.  *Id.* at ¶ 14 (citing ECF No. [10] at Exh. D).  On April 25, 2016, Plaintiff received a letter from Defendant bearing Plaintiff's name, an account number, a balance in the amount of $123.45, and a notice that the letter was "an attempt to collect a debt."  *Id.* at ¶ 15 (citing ECF No. [10] at Exh. E). Defendant had yet to "validate the debt" at this point.  *Id.*

On May 10, 2016, Plaintiff sent a third debt validation letter to Texas MedClinic, and, on May 12, 2016, Plaintiff sent a "Notice of Pending Lawsuit" to Texas MedClinic in "an effort to mitigate damages and settle all claims prior to litigation."  *Id.* at ¶¶ 16-17 (citing ECF No. [10] at Exhs. F-G).  On May 28, 2016, Plaintiff received a second letter from Defendant bearing Plaintiff's name, an account number, a balance in the amount of $123.45, and a notice that the letter was "an attempt to collect a debt."  *Id.* at ¶ 18 (citing ECF No. [10] at Exh. H).

Based on these allegations, Plaintiff, proceeding *pro se*, filed suit against Defendant on August 16, 2016, asserting six counts, including violations of the Fair Debt Collection Practices Act ("FDCPA") (Counts I-II), violations of the Florida Consumer Collection Practices Act ("FCCPA") (Counts III-IV), and violations of the Fair Credit Reporting Act ("FCRA") (Counts V-VI).  *See* ECF No. [10]; *see also* ECF No. [23].  Plaintiff's First Amended Complaint sought "$1,000 statutory damages, actual damages, filing fees and cost [sic]" as to each of Counts I-V, and actual damages, filing fees and costs, and punitive damages as to Count VI.  ECF No. [10];

---

[1] The Second Amended Complaint alleges that Plaintiff never received from Defendant a response to the debt validation letter.  *Id.* at ¶ 11.
[2] The exhibits referenced herein are referenced in both Plaintiff's First and Second Amended Complaints, ECF Nos. [10], [27], and are attached to Plaintiff's First Amended Complaint, *see* ECF No. [10] at Exhs. A-H.

ECF No. [23]. On September 16, 2016, Defendant filed its first Motion to Dismiss, ECF No. [12], seeking dismissal of Plaintiff's plea for statutory damages with respect to Counts I-IV of the First Amended Complaint to the extent that Plaintiff was seeking statutory damages of $1,000 per violation of the FDCPA and FCCA, as well as dismissal of Counts II and VI of the First Amended Complaint.  The Court granted Defendant's first Motion to Dismiss in part, ordering that, with respect to damages, Plaintiff could not recover in excess of $1,000 for any and all violations of the FDCPA or in excess of $1,000 for any and all violations of the FCCPA, and dismissing Count VI without prejudice.  ECF No. [26].

Plaintiff thereafter filed a Second Amended Complaint on November 7, 2016, asserting the same two violations of the FDCPA under one Count (Count I), the same two violations of the FCCPA also under one count (Count II), and only a single violation of the FCRA (Count III). ECF No. [27]; *see also* ECF No. [10].  Defendant now moves to dismiss all counts of Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6).

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked

3

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v.*

4

*Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "this leniency does not give a court license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cty of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citations omitted).

## III. DISCUSSION

### A. FDCPA and FCCPA Claims (Counts I-II)

In Count I of the Second Amended Complaint, Plaintiff alleges two separate violations of the FDCPA. ECF No. [27] at ¶¶ 22-25. Specifically, Count I alleges that Defendant violated the FDCPA "by falsely representing the character, amount, or legal status of any debt" and "by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at ¶¶ 22, 24. In Count II of the Second Amended Complaint, Plaintiff alleges two separate violations of the FCCPA whereby Defendant, on two separate occasions, "claim[ed], attempt[ed] or threaten[ed] to enforce a debt when [it] knew that the debt was not legitimate." *Id.* at ¶¶ 29-32. Defendant argues that Plaintiff's Second Amended Complaint fails to state a claim under either the FDCPA or the FCCPA because it does not make the threshold allegation regarding the nature of the underlying debt – namely, that the alleged activity at issue arose out of communications related to attempts to collect a "consumer debt." ECF No. [35] at 3-4.

In 1977 Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010). The FDCPA and the FCCPA identically define "debt" as "any obligation or alleged obligation *of a consumer* to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added); Fla. Stat. § 559.55(1) (same). Accordingly, the FDCPA and FCCPA apply only to payment obligations of a (1) consumer arising out of a (2) transaction in which the money, property, insurance, or services at issue are (3) primarily for personal, family, or household purposes. *Oppenheim*, 627 F.3d at 837. "The statute thus makes clear that the mere obligation to pay does not constitute a 'debt' under the FCPA." *Id.*

Here, Defendant is correct that the factual allegations presented in Plaintiff's Second Amended Complaint are insufficient to establish that Defendant's activities relate to a "consumer debt." Regarding the underlying debt, Plaintiff merely alleges that she had no prior relationship with Defendant and that she has no contractual obligation to pay Defendant. ECF No. [27] at ¶¶ 8-9. By failing to offer any specific facts relating to the debt itself, the Second Amended Complaint falls short of demonstrating that the underlying debt involves, for example, "a

mortgage, credit card, medical bill, or other consumer debt." *Dunham v. Lombardo, Davis & Goldman*, 830 F. Supp. 2d 1305, 1307 (S.D. Fla. 2011).

Plaintiff attempts to overcome that deficiency by asserting in her Response that "[t]he debt in question as alleged is . . . related to a Medical bill." ECF No. [36] at 1. Defendant argues that Plaintiff is precluded from relying on this allegation as it was omitted from Plaintiff's Second Amended Complaint. ECF No. [37] at 2. However, though such an allegation describing the nature of the underlying debt is indeed omitted from the Second Amended Complaint, the Second Amended Complaint does incorporate by reference an invoice pertaining to the underlying debt. *See* ECF No. [27] at ¶ 15 (citing ECF No. [10] at Exh. E). That invoice, which was issued by Texas MedClinic and was included in a letter sent to Plaintiff by Defendant, refers to Plaintiff as a "patient" and advises that "[c]harges for this visit are for ancillary services provided by Texas MedClinic and professional services provided by the physician." ECF No. [10] at Exh. E. The Court finds that the contents of the invoice shed light on the nature of the underlying debt, and in doing so, provide more than a mere recital of the statutory definition of a consumer debt. *Cf. Dunham*, 830 F. Supp. 2d at 1307 (denying request for default judgment where plaintiff failed to plead facts regarding consumer debt and instead "parroted the language of the FDCPA"). Under the liberal pleading standards governing *pro se* pleadings, the Court finds that the invoice and the Second Amended Complaint's incorporation of it by reference sufficiently demonstrate that the underlying debt is related to a medical bill and establish Defendant's notice of such. Accordingly, the Court declines to dismiss Plaintiff's FDCPA and FCCPA claims on the basis that the Second Amended Complaint does not sufficiently allege that the alleged activity at issue arose out of communications related to attempts to collect a "consumer debt."

**B. FCRA Claim (Count III)**

In Count III of the Second Amended Complaint, Plaintiff alleges that Defendant violated section 1681b(f) of the FCRA "by obtaining Plaintiff's consumer report without a permissible purpose as defined by 15 U.S.C. § 1681b."  ECF No. [27] at ¶ 40.  Defendant argues that Plaintiff's Second Amended Complaint fails to state a claim under the FCRA because it does not allege the absence of an underlying debt or that Defendant was aware that no underlying debt existed when it requested Plaintiff's consumer report.  ECF No. [35] at 4-5.

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).  Section 1681b(f) of the FCRA provides in relevant part: "A person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section."  "To state a FCRA claim of willful or knowing acquisition of a consumer report, a plaintiff must prove each of the following: (i) that there was a consumer report, (ii) that defendants used or obtained it, (iii) that they did so without a permissible statutory purpose, and (iv) that they acted with the specified culpable mental state."  *Brown v. Encore Capital Grp. Inc.*, 2015 WL 1778380, at *5 (N.D. Ala. Apr. 20, 2015) (citing *Shepherd–Salgado v. Tyndall Fed. Credit Union*, 2011 WL 5401993, at *3 (S.D. Ala. Nov. 7, 2011)).  A consumer reporting agency is permitted to furnish a consumer report "to a person which it has reason to believe intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of

8

an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). "In short, it is permissible to obtain a consumer's credit report for collection purposes." *Brown*, 2015 WL 1778380, at 5* (citing *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir.2011)). That said, "it is not a permissible purpose to pull a consumer's report where no actual debt exists." *Tacoronte v. Tate & Kirlin Associates*, 2013 WL 5970720, at *9 (M.D. Fla. Nov. 8, 2013).

Here, Plaintiff's Second Amended Complaint does not dispute the underlying debt and instead appears to take issue with Defendant's right to collect it, alleging that Plaintiff "has no prior or present established relationship with Defendant. . . . [or any] contractual obligation to pay Defendant." ECF No. [27] at ¶¶ 8-9; *see also* ECF No. [36] at 6. Indeed, the Second Amended Complaint expressly acknowledges "the agreement creating the debt permitted by law." ECF No. [27] at ¶ 32 (citing ECF No. [10] at Exh. E). Without an allegation that Plaintiff did not owe the underlying debt, the Second Amended Complaint fails to support the conclusory allegation made thereunder that Defendant obtained Plaintiff's consumer report without a permissible purpose. *See Brown*, 2015 WL 1778380, at *5-6 (dismissing complaint where plaintiff alleged that she was not indebted to debt collector but failed to allege that she did not owe the debt). Accordingly, Plaintiff's FCRA claim under Count III of the Second Amended Complaint will be dismissed without prejudice with leave to amend.

## IV. CONCLUSION

For the foregoing reasons, is it hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Account Services' Motion to Dismiss, ECF No. [35], is **GRANTED IN PART and DENIED IN PART**.
2. Count III is **DISMISSED** without prejudice.

Case No. 16-cv-61094-BLOOM/Valle

3. Plaintiff is granted leave to amend and is directed to file an amended complaint on or before **February 13, 2017**.

**DONE AND ORDERED** in Miami, Florida this 1st day of February, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record
Nathalie Jimenez, *pro se*
406 NW 68th Avenue
Apt 411
Plantation, FL 33317